IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**DARRYL SMITH, #M51792,**

        **Plaintiff,**

v.

**JASON MORRIS,**

        **Defendant.**

Case No. 3:19-cv-01138-SMY

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

    This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 54), which Plaintiff opposes (Doc. 60). For the following reasons, the motion is **DENIED**.

### PROCEDURAL BACKGROUND

    Plaintiff Darryl Smith, an inmate of the Illinois Department of Corrections, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center. Following preliminary review of the Complaint, Plaintiff is proceeding on the following claim:

    Count 1:    Eighth Amendment claim against Defendant Morris for deliberate indifference to Plaintiff's risk of self-harm and attempted suicide.

(Doc. 18).

### FACTS[1]

    Smith was housed in segregation in the North 2-4 Gallery of Menard on March 20, 2019. (Doc. 59). He met with Qualified Mental Health Provider Pappas that day for a wellness check due to a mental health services referral. (Doc. 55-2). Smith reported to Pappas that his mother

---

[1] The facts are undisputed unless otherwise noted.

had died. (*Id.*). Based upon their discussion, Pappas found that Plaintiff was "not at immediate risk for himself or others" at that time. (*Id.*).

Defendant Jason Morris was employed as a correctional officer at Menard and worked from 3:00 p.m. to 11:00 p.m. on March 20, 2019. (Doc. 59). Morris was assigned to segregation in the North 2-4 Gallery. (*Id.*). His duties and responsibilities included, but were not limited to, performing counts, escorting inmates for phone calls, escorting inmates to medical technicians, completing rounds every thirty minutes, and assisting with chow time. (*Id.*). Morris did not provide medical or mental health treatment to inmates. (*Id.*).

On the evening of March 20, 2019, Morris completed his last security round between 10:35 p.m. and 10:45 p.m. (*Id.*). The shift change occurs just before 11:00 p.m. on the second shift. (*Id.*). Before 11:00, the third shift employees arrive and the officers pass on any necessary information. (*Id.*). Morris would have left the gallery prior to 11:00 p.m., walked to the front gate, and walked out of the facility at 11:00 p.m. (*Id.*).

At approximately 11:00 p.m., correctional officer Hecht, who was assigned to the North 2-4 Gallery, was performing a count when he observed Smith in his cell lying on his bed unresponsive with blood on the cell floor. (Docs. 55-3, 59). Smith was taken to the health care unit to be evaluated by medical staff and was subsequently sent by ambulance to Chester Memorial Hospital. (Doc. 55-3).

The remaining facts are disputed. Morris was interviewed by internal affairs on May 12, 2019 and reported the following: Smith never told him that he had cut himself. There was no medical emergency involving Smith when he interacted with him on the evening of March 20, 2019 or when he completed his last security round of the evening. (*Id.* at p. 7). Smith did not request medical assistance, tell him that he was suicidal, or show him cuts on his forearms on the

evening of March 20, 2019. (*Id.*).

Smith asserts the following: he told Morris he was suicidal and showed him that he had cut his arm open in two places. (Doc. 60). Morris asked him to stick his arms out of the chuck hole so he could get a better look. (*Id.*). He told Morris that he felt like he was going to pass out because he took "multiple different pills" and had lost a lot of blood due to the cuts on his arm. He requested medical attention. (*Id.*). Morris told him he would have to wait until the next shift to get medical attention, gave him paper towels for the bleeding, and left. (*Id.*).

## DISCUSSION

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing there is a genuine issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and it may not "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, "it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014).

The Eighth Amendment's proscription against cruel and unusual punishment imposes an obligation on states "to provide adequate medical care to incarcerated individuals." *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1072 (7th Cir. 2012). Prison officials and medical staff

violate the Eighth Amendment if they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To succeed on a claim for deliberate indifference, a prisoner must demonstrate that he suffered from an objectively serious medical condition, and the defendant acted with deliberate indifference to his medical needs. *Id*.

The risk of suicide is an objectively serious medical condition; inmates have the right to be free from deliberate indifference to this risk while in custody. *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019). "Where the harm at issue is a suicide or attempted suicide," deliberate indifference "requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded that risk." *Id*. A prison official ignoring a request for medical assistance may constitute deliberate indifference. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016). And "an inmate is not required to show that he was literally ignored by prison staff to demonstrate deliberate indifference." *Id*. If a risk from a particular course of medical treatment (or lack thereof) is obvious enough, a factfinder can infer that a prison official knew about it and disregarded it. *Id*.

Here, Smith's assertions that he told Morris he was suicidal, showed him cuts on his arm, told him he felt like he was going to pass out because he took "multiple different pills" and had lost a lot of blood, and requested medical care, create factual disputes that prelude summary judgment.

## Qualified Immunity

Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When determining whether an official is entitled to qualified immunity, the Court considers: (1) whether

the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the official's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *See Pearson*, 555 U.S. at 232. "…[Q]ualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Humphries v. Milwaukee Cty.*, 702 F.3d 1003, 1006 (7th Cir. 2012) (internal citations and quotation marks omitted).

As previously noted, material issues of fact preclude a finding as a matter of law that Morris did not engage in a constitutional violation. And accepting Smith's allegations as true, any reasonable officer would know he had a duty to seek medication attention for Smith under the circumstances. *See*, *Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 422 (7th Cir. 2012). For these reasons, Morris is not entitled to qualified immunity.

## DISPOSITION

Defendant's Motion for Summary Judgment is **DENIED**. This matter will proceed to trial on Smith's claim in Count 1 against Defendant Morris. A separate order will be issued recruiting Standby Counsel for purposes of trial and setting a status conference to schedule final pretrial conference and trial dates.

IT IS SO ORDERED.

DATED: October 3, 2022

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**